☒ FILED ☐ LODGED

**JUL 11 2022**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

DaJuan Williams #124345
Name and Prisoner/Booking Number

Arizona State Prison Complex - Eyman
Place of Confinement

P.O. Box 3400/SMU II
Mailing Address

Florence, Az. 85132
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

DaJuan L. Williams
(Full Name of Plaintiff),

Plaintiff,

v.

(1) County of Yuma #4
(Full Name of Defendant),

(2) Leon N. Wilmot, Sheriff of Yuma County

(3) Sgt. Robert Arreola #D-12

(4) Lt. Michael Cooper #D-16

Defendant(s).

☒ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. CV-22-1163-PHX-MTL (CDB)
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

Jury Trial Demanded

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
   ☐ Other: _____

2. Institution/city where violation occurred: Yuma County Detention Center, Yuma, Arizona

5. Lts Duarte #D-5
6. Lts Gomez #D-3
7. Lts Guerrero #D-4
8. Lts Obschester
9. Captain Kelly D. Milner
10. SDO Julian Aguayo #D-124
11. DO Alvarez #D-104
12. SDO Caudillo #D-145
13. DO Covarrubias #D-175
14. DO Victor Davalos #D-160
15. DO C. Hand #D-65
16. Sgts Eldee Harper, Jr. #D-11
17. DO L. Lopez #D-107
18. DO Ertz Mendez #D-108
19. DO I. Navarro #D-147
20. SDO D. Perez #D-75
21. Sgts Ramon Rendon #D-24
22. SDO Rodriguez #D-26
23. Sgts J. Ruelle #D-25
24. SDO Russom #D-80
25. Sgts Sanchez #D-16
26. Sgts A. Serna #D-28
27. Sgts C. Silva #D-29
28. DO Diana Sosa #D-129
29. SDO William Valdez #D-101
30. DO A. Zepeda #D-201
31. "DOES 1-50"

## B. DEFENDANTS

1. Name of first Defendant: __County of Yuma #4__. The first Defendant is employed as: __County of the State of Arizona__ at __Yuma County Detention Center, City of Yuma__
(Position and Title) (Institution)

2. Name of second Defendant: __Leon N. Wilmot__. The second Defendant is employed as: __Sheriff of Yuma County__ at __Yuma County Sheriff's Office (YCSO)__
(Position and Title) (Institution)

3. Name of third Defendant: __Robert Arrtola #D-12__. The third Defendant is employed as: __Detention Officer (DO), Sergeant (Sgt.)__ at __Yuma County Detention Center (YCDC)__
(Position and Title) (Institution)

4. Name of fourth Defendant: __Michael Cooper #D-10__. The fourth Defendant is employed as: __DO, Lieutenant (Lt.)__ at __YCDC__
(Position and Title) (Institution)

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?  ☒ Yes   ☐ No

2. If yes, how many lawsuits have you filed? __7__. Describe the previous lawsuits:

   a. First prior lawsuit:
   1. Parties: __DaJuan Williams__ v. __Charles L. Ryan, et al.__
   2. Court and case number: __CV10-2392-Phx-FJM (LOA)__
   3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) __Dismissed__

   b. Second prior lawsuit:
   1. Parties: __DaJuan L. Williams__ v. __Sgt. Maxey, et al.__
   2. Court and case number: __CV16-4059-Phx-DGC (CDB)__
   3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) __Settled__

   c. Third prior lawsuit:
   1. Parties: __DaJuan L. Williams__ v. __Charles L. Ryan, et al.__
   2. Court and case number: __CV17-1833-Phx-DGC (CDB)__
   3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) __Appealed Pending Before 9th Circuit Court of Appeals, No. 20-17507__
   (Continues of page 5)

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

| # | Name | | Role | Location |
|---|---|---|---|---|
| 5. | Lt. Duarte #D-5 | DO | Lt. | YCDC |
| 6. | Lt. Gomez #D-3 | DO | Lt. | YCDC |
| 7. | Lt. Guerrero #D-4 | DO | Lt. | YCDC |
| 8. | Lt. Oberosler | DO | Lt. | YCDC |
| 9. | Kelley D. Maurer | DO | Captain | YCDC |
| 10. | Julian Aguayo #D-124 | DO | Senior Detention Officer (SDO) | YCDC |
| 11. | DO Alvarez #D-104 | DO | DO | YCDC |
| 12. | SDO Carrillo #D-145 | DO | SDO | YCDC |
| 13. | DO Covarrubias #D-125 | DO | DO | YCDC |
| 14. | Victor Davalos #D-160 | DO | DO | YCDC |
| 15. | C. Hand #D-65 | DO | DO | YCDC |
| 16. | Eldee Harper, JR. #D-11 | DO | Sgt. | YCDC |
| 17. | L. Lopez #D-107 | DO | DO | YCDC |
| 18. | Eric Mendez #D-108 | DO | DO | YCDC |
| 19. | I. Navarro #D-147 | DO | DO | YCDC |
| 20. | D. Perez #D-75 | DO | SDO | YCDC |
| 21. | Ramon Rendon #D-24 | DO | Sgt. | YCDC |
| 22. | SDO Rodriguez #D-26 | DO | SDO | YCDC |
| 23. | T. Ruelle #D-25 | DO | Sgt. | YCDC |
| 24. | SDO Russom #D-80 | DO | SDO | YCDC |
| 25. | Sgt. Sanchez #D-16 | DO | Sgt. | YCDC |
| 26. | A. Serna #D-28 | DO | Sgt. | YCDC |
| 27. | C. Silva #D-29 | DO | Sgt. | YCDC |
| 28. | Diana Sosa #D-179 | DO | DO | YCDC |
| 29. | William Valdez #D-101 | DO | SDO | YCDC |
| 30. | A. Zepeda #D-201 | DO | DO | YCDC |
| 31. | "DOES 1-50" | YCDC Staff | YCSO Employee | YCDC |

(Previous Lawsuits continued)

d. DaJuan Williams vs Ernesto Trujillo, et al., CV18-3239-Phx-SPL (CDB) : Pending;
e. DaJuan Williams vs Sgt. Wingert #11329, et al., CV19-5096-Phx-MTL (CDB) : Pending;
f. DaJuan Williams vs David Shinn, et al., CV21-2151-Phx-MTL (CDB) : Pending;
g. DaJuan Williams vs County of Yuma, et al., CV22-00154-Phx-MTL (CDB) : Pending;

5 of 20
2-B

## D. CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: __14th Amendment__

2. **Count I.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☒ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: ___

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   On May 5, 2022, I was transferred from the Arizona Department of Corrections (ADC) into the custody of the Yuma County Sheriff's Office (YCSO) and transported to the Yuma County Detention Center (YCDC) for a pretrial hearing in my pending criminal case out of Yuma County. I would remain in the custody of YCSO and the YCDC for approximately 28 hours before being transferred and transported back to ADC on May 6, 2022 following my court hearing.

   Upon my arrival at the jail, I was non-compliant with certain DO directives. I refused to be finger printed or photographed or to submit to "strip search or body scan" procedures, however, I complied with multiple "pat down" searches and the "wand" or metal detector procedures and all other directives and I was not assaultive, aggressive, or combative. There was an incident where I was alleged to have been in possession of contraband which was removed by the DO's without incident in "Bookings". I was then escorted to the F1-SMU1 unit by Sgt. Robert Arriola #D-12, Ramon Rendon #D-24, and T. Ruella #D-25 and DO L. Lopez #D-107 and other unknown DOs and placed into cell 505. As punishment, Sgt. Arriola removed the mattress from my cell and ordered that I not be provided with any linen or bedding or hygiene or other basic human necessities.

   Once inside the cell, Sgt. Arriola ordered that I be placed into "SMU handcuffs" and cuffed on the front of my body. "SMU cuffs," as they are known around the jail, are handcuffs that are connected with a solid piece of metal as opposed to the regular "chain links" which connects "standard" handcuffs. This prevents movement of the hands outside of the horizontal position and keeps the hands and wrist, palms facing and thumbs up, side by side and prevents movement out of that position. Once restrained, the DOs exited the cell leaving me restrained in SMU handcuffs and leg iron shackles on my ankles and I would remain

   (continues on the following page)

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   In addition to the injuries as stated above, I suffered severe post-traumatic stress pain and suffering, anxiety, anger and frustration, I was embarrassed and humiliated. I was only fed 2 "sack lunches" with 2 lunchmeat sandwiches and a fruit over a 32 hour period causing me severe stomach and hunger pains. I suffered excruciating pain in my back due to my spinal condition and being forced to sleep on cold concrete.

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count I? ☐ Yes ☒ No
   c. Did you appeal your request for relief on Count I to the highest level? ☐ Yes ☒ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. I was only in YCSO custody for approximately 28 hours and I remained in handcuffs the whole time so the grievance procedure was not available. I am no longer in YCSO custody.

Restrained in this manner for approximately the next 20 hours without any relief.

Approximately an hour after being left in the cell in this manner, I notified SO Alvarez #D-104 that I needed to take a shit and he stated, "O-well." I explained that I didn't have any toilet paper and that I could not take a shit restrained the way I was and he stated, "Well you shouldn't have been acting how you were acting." After repeatedly requesting to use the bathroom SO Alvarez finally brought me approximately 2 to 3 feet of toilet paper and told me that per Sgt. Sanchez, the restraints will not be removed. I stated that I could not take a shit restrained like that and that he didn't give me enough toilet paper even if I could. SO Alvarez stated that I better figure out how and to use my hand to wipe my ass and walked away. I asked SO Alvarez when I was going to be fed and he said he didn't know.

After shift change, I notified the FI-SMU I supervisor, SDO Russom #D-80, that I was never fed lunch and that I needed to take a shit and had been requesting for hours to do. SDO Russom stated, "Well you should have thought about that before you decided to misbehave," and walked away. I later requested to speak to SDO Russom and requested that the conversation be recorded on "Body cam #5." I requested to be allowed to take a shit and to be given a mattress and bedding and a towel and hygiene and all of my requests were denied. I was never allowed to take a shit and was forced to "hold it in" until I was returned to the prison over 20 hours later.

I would spend the night, in shackles and handcuffs, in a freezing cold cell where I was forced to sit and lay on ice cold concrete slab without any protections or reliefs. I was deprived of any and all sleep as the conditions of the cell, in combination with the pain in my bowels and stomach from holding in my waste and, the conditions of the restraints which over the passage of time, where I was trying to find comfortable sitting and/or laying positions and was trying to flex and stretch to keep, and/or to regain, feeling in my hands, arms, and legs, began to dig and cut into my body, made sleep for any period impossible. My wrist and my ankles ultimately ended up being severely cut up and caused me significant and excruciating pain where the restraints continued to rub against and cut into my wounds throughout the night and through the following days.

On the morning of May 6, 2022, when Sgts Arreola, Rendon, and Ruelle, along with a number of unknown officers, arrived to take me to court, I demanded medical assistance to have my wounds and my wrist, which were all bloody, cleaned and bandaged. After securing me in 4 pair of handcuffs, belly chain handcuffs and a pair of SMU cuffs, I was escorted to the medical unit. My wounds and the blood was cleaned up by medical staff and Band Aids, only, were placed on my wounds with ointment. But the handcuffs were never removed. Nurse Cowan provided me with my

(Count 1 continued)

pain medication prescribed for my spinal condition when I notified her of the pain I was in all over my body and particularly in my back. And when I explained the pain I was suffering from not being allowed to take a shit, Nurse Cowan asked the DOs if they would allow me to use the bathroom and Sgt. Rendon stated No. I had requested to have my wounds photographed before and after they were cleaned and Sgt. Rendon denied this request also. I was then taken to court in this condition where the restraints continued to rub against and cut open my wounds through and around the band-aids, causing me significant pain and restarting my wounds bleeding.

Following my court proceedings, under the orders of Lts Michael Cooper #D-6 and Lt Guerrero #D-4 and under the instructions of Sgt Arriola, I was placed into some sort of contraption or device that rendered my body immobile and restrained me to an upright position. I was instructed to lay on the floor on my stomach on some type of thick or padded and reinforced blanket, which was then tightly wrapped around my legs several times and then pulled tighter with, and fastened by, straps. This prevented any and all movement of my legs while tightly securing them together side by side. Having been previously handcuffed behind my back, I was then rolled over and placed into a sitting position where some type of "vest," containing straps, was placed on me. Through a series of straps, loops, and buckles, connecting the "straitjacket" like vest to the contraption on my legs, I was secured into an immobile upright sitting position with my hands still cuffed behind my back and leg iron shackles still secured on my ankles. Other than turning my head from right to left, I was restricted from all movement and bodily functions. Since I had not assaulted anyone and was not combative and was compliant with all orders, and since I have never in my life engaged in, and was not at that time engaging in, any type of "self-harm," I understood that my placement into this contraption was a punishment intended to torture and humiliate my person.

Photographs were taken of my condition by Sgt Rivelle and another DO with the Jail's investigator's camera for what I assumed was documentary purposes and then I was carried out to a transport vehicle and strapped into the back seat. Lt Cooper was trying to have a "spit mask" placed over my face and head even though I have never in my life spit on anyone and was not at that time engaging in any such conduct, and Lt Guerrero was taking pictures and recording video with his personal cell phone while laughing at me and joking about my condition with other DOs and stating to me, "Smile for the cameras" because documentary photos had previously been taken and because specific DOs where wearing "body cams." I understood Lt Guerrero's actions to be intended to humiliate and degrade my person.

(Count 1 continued)

I was transported from YCDC in Yuma, Arizona to Arizona State Prison Complex - Eyman prison in Florence, Arizona — an approximately 3 1/2 hour drive (which included the DO's stopping for refueling and to get something to eat). In this condition I suffered severe pain in my arms and shoulders where I could never move my arms from the position behind my back or otherwise gain any relief, and, through my legs and feet which had "fallen asleep" due to the lack of movement and circulation. I remained restrained in this contraption for a total of approximately 4 or 5 hours, but it felt like years. Once we arrived at the prison, Lt. Guerrero entered and invited the prison's captain and Sgts. to come out and view the conditions that they had placed me in before I was removed from the vehicle, and stood around laughing and joking with the prison officers as I was removed from the vehicle. Later, I would be repeatedly asked by different prison officers if I was the one transported in the "burrito wrap". When the contraption was finally removed, I could not walk or stand until I regained circulation and feeling in my legs and feet.

I remained secured in handcuffs and leg iron shackles for the duration of the approximately 28 hours that I was in YCSO's custody without relief or the restraints being removed. I spent approximately 18 hours locked inside of a cell in full restraints and unattended and at no point during that time was I ever seen or evaluated by any medical staff and neither, at any point during that time, was my restraints checked or my condition evaluated by medical or jail staff. At no point in time, before, during, or after I was placed into the restraint contraption, severely restricting my bodily functions and movement, was I ever seen or evaluated by any medical staff. At no point in time over the 28 hours period, while in YCSO custody, was I ever seen or evaluated by any mental health professional.

On or about May 5th and 6th, 2022, YCDC officers, Defendants Lt. Michael Cooper #D-6, Lt. Guerrero #D-7, Sgt. Robert Arriola #D-12, Sgt. Ramon Rendon #D-24, Sgt. TJ Ruelle #D-25, Sgt. Sanchez #D-16, DO Alvarez #D-104, DO Lopez #D-107, SDO Russom #D-80, and "DOES 1-50", all acting under color of state law, violated my 14th and 8th Amendment constitutional rights as a pretrial detainee to be free of excessive, unreasonable, and unnecessary use of force, punishment, torture, and unconstitutional conditions of confinement when, with sadistic and malicious intent to punish, harm, injure, abuse, embarrass or humiliate my person, he/they committed any one or all of the acts — causing any one or all of the injuries, as stated herein, and/or failed to intervene or act to remedy and/or to provide any type of relief and/or medical care and treatment for any one or all of the conditions and violations of my constitutional rights as stated herein.

## COUNT II

1. State the constitutional or other federal civil right that was violated: __14th Amendment__

2. **Count II.** Identify the issue involved. Check **only one.** State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☒ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   On 4-12-21, following an incident where officers were refusing to transport me to court for my scheduled court appearance, I refused to surrender the handcuff restraints that had been on me through my cell-doors. Sgts. Ramon Rendon and others repeatedly asked me to surrender the cuffs over a period of hours but I continued to refuse to do so and at some point, though I was never informed of the consequences and given the opportunity to comply based upon notice and informed knowledge, the decision was made by officers to enter my cell and use force against my person.

   Prior to the use of force, Sgt. Ts Rueda, an officer with whom I had a good rapport, and the Jail's contract psych doctor, Dr. Miriam Espinoza, came to my cell to speak with me to de-escalate and resolve the issue and I spoke with both persons. Shortly after they exited the unit and my having took the time to reflect on my conversation with Dr. Espinoza, I made the determination to surrender the handcuffs and to comply with officers however, I was never given the opportunity. After speaking with the psych, no officer ever returned to ask me if I was going to surrender the cuffs or comply without any warning or a chance to surrender and after speaking to the psych and calming down, my cell door came open and SDO Julian Aguayo #D-124, DO L. Lopez, SDO D. Perez #D-75, DO I. Navarro #D-147, and DO A. Zepeda #D-201 entered my cell and began assaulting my person under the directions of Sgt. Rendon. DO C. Haud #D-65, whom followed the other officers into my cell with a Taser, twice tried to Taser me but the Taser malfunctioned. I was slammed against the walls, the toilet/sink, and bunk after and I was repeatedly punched in the head, face, and body with closed fist and, I had handcuffs on my wrist pulled and/or tightened and had cuffs and leg iron shackles tightly applied to my wrist and legs. My hair was yanked and pulled out and I had a Taser repeatedly pointed at me and was threatened with electrocution shocks. These uses of force were unreasonable and completely unnecessary when I wasn't given a reasonable opportunity to comply before the use of force and when I was willing to surrender ~~not open plans~~ ~~~~ (Continues on the following page)

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   I suffered injuries and bruises to my face and body and lacerations to my head and my wrists. I also suffered injuries to my back and an aggravation to my pre-existing medical spinal condition which caused me significant pain and suffering long after the use of force. I also suffered severe anxiety and depression and loss of self-respect and from flashes of anger and thoughts of hurting others after my treatments.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☒ Yes   ☐ No
   b. Did you submit a request for administrative relief on Count II?   ☒ Yes   ☐ No
   c. Did you appeal your request for relief on Count II to the highest level?   ☒ Yes   ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not.   N/A

(Count 2 continues)

and comply.

- On or about April 12, 2021, YCDC officers, Defendants SDO Julian Aguayo #D-124, DO Co. Hand #D-65, DO L. Lopez, DO J. Navarro #D-147, SDO D. Perez #D-75, Sgt. Ramon Rendon, and DO A. Zepeda #D-201, all acting under color of state law, violated my 14th and 8th Amendment constitutional rights as a pretrial detainee to be free of excessive, unreasonable, and unnecessary uses of force when, with sadistic and malicious intent and as a means to punish, injure and hurt, and to embarrass and humiliate my person, he/they committed any one or all of the acts — causing any one or all of the injuries, as stated herein,

# COUNT III

1. State the constitutional or other federal civil right that was violated: __14th Amendment__

2. **Count III.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☒ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   I hereby incorporate all statements of facts as stated above in Count 2 as if stated herein.

   On or about April 12, 2021, YCDC officer, Defendant SDO D. Perez, acting under color of state law, violated my 14th and 8th Amendment constitutional rights as a pretrial detainee to be free of excessive, unnecessary, and unreasonable uses of force when, with sadist and malicious intent, and as a means to punish, torture, and hurt, and embarrass and humiliate my person, he repeatedly punched me in my face and head with closed fisted "upper cuts" and strikes 5 to 8 times while I was in handcuff restraints and being held in place by other officers and was not capable of resisting or defending myself; and repeatedly pulling and yanking my hair, pulling out a chunk of my hair and causing a bloody gash in the top of my head, after I had been subdued and was laying on my stomach handcuffed behind my back and secured in leg iron shackles with a 300 pound officer laying on my back and other officers holding my legs, and when I was not moving, or resisting, in any manner or saying anything, and with sadistic and malicious intent to violate my cultural and religious beliefs and values, when I had previously explained to him in a prior incident when I would not allow him to touch my hair, that for cultural and religious reasons (I am New Orleans, Louisiana born and brought up and, of a Native American religion) people who are not my family members are not allowed to touch my hair, as this can be used to harm myself or my family; causing me physical and mental injuries, where my hair was pulled out, endangering myself and my family and, where my head was cut open, causing me to suffer stress, anger, anxiety, and feelings of hatred and violent intents at the willful disregard and disrespect to my family, culture, and religions.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   I hereby incorporate all statements of fact and injuries as stated herein, and above in Count 2, as if stated herein.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count III?  ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Count III to the highest level?  ☒ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. N/A

If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.

# Count 4

1. **14th Amendment Violations**
2. **Excessive Force By an Officer**
3. **Supporting Facts**

On November 8, 2021, following a staff assault incident, a "cell entry" and use of force of conducted by officers under the command of Sgt. Robert Arriola when I refused to surrender the belly chain handcuff restraints, I was initially resistant and combative with officers. But while I was engaged with officers holding me against the toilet/sink area, Sgt. Arriola placed a Taser on my left shoulder and began employing electrical currents through my body which immediately caused me to become incapacitated as my body "froze up" and all resistance ceased; however, Sgt. Arriola kept the Taser pressed against my shoulder and continued deploying voltages to my body until, and throughout my slow decent to the ground, as I fell to the floor. Once I hit the ground, landing prone in a spread eagle position and clearly not resisting nor capable of defending myself, Sgt. Arriola then removed the Taser from my shoulder and placing it on my stomach, began deploying electric currents through my body again for another 3 to 5 seconds.

Later that night, as I was being checked out by nurse Mithenand Nya Seuwa, I requested that Sgt. J. Hernandez #D-20 take pictures of the multiple burn marks from the Taser prongs on my shoulder and my stomach. SDO Russom, DO Arcos #D-137, and DO O'Donnell #D-44 were all present and witnessed my burn marks as the photos were taken and Sgt. Sanchez was also present but did not enter my cell.

➡ On or about November 8, 2021, YCDC officer, Defendant Sgt. Robert Arriola, acting under color of State Law, violated my 14th and 8th Amendment Constitutional Rights as a pretrial detainee to be free of excessive, unreasonable, and unnecessary uses of force when, with sadistic and malicious intent to punish, injure or harm, and to embarrass and humiliate my person, he committed any one or all of acts — causing any one or all of the injuries, as stated herein.

4. **Injury**

I suffered from severe shock and anxiety and suffered severe pain and anguish from the sadistic and malicious treatment and torture of my body resulting in the burning of my flesh and pain and soreness on/in my stomach and shoulder areas for weeks following the incident. Sgt. Arriola continuously engaged in uses of force and abused my person for the duration of my custody in YCDC in a sadistic pattern causing me severe anxiety, fear, and depression and loss of sleep and caused

(Count 4 continues)

me to genuinely fear for my life and safety at his hands.

## 5. Administrative Remedies:
a. Yes.  b. Yes.  c. Yes.  d. N/A

# Count 5

1. **14th Amendment Violations**
2. **Disciplinary Proceedings**
3. **Supporting Facts**

I hereby incorporate all statements of fact as stated above in Counts 1-5, and in any related, joined, or consolidated counts, as if stated herein.

The County of Yuma, by and through the YCDC, has a custom, policy, or practice of punishing pretrial detainees and/or housing inmates (I/m's) under cruel and unusual conditions of confinement in violation of the 14th and 8th Amendments of the Constitution, imposing an atypical and significant hardship upon myself, and like and similarly situated I/m's, without due process or other constitutional protections where disciplinary violations may result in I/m's being placed, indefinitely and/or permanently, into the Jail's isolation/segregation units and/or — the F1-SMU1 punishment unit, and/or result in I/m's being placed, or maintained, on "zero items" status while at the same time — YCDC does not employ nor designate any specific area or unit as "disciplinary segregation/detention/housing" or list any of the above as possible disciplinary sanctions but nonetheless employs these punishments for disciplinary violations.

The YCDC Prisoner Handbook states that I/m's have a right to due process and comports to establish a disciplinary process affording this right in prescribing that I/m's are entitled to receive written notice of the disciplinary charge, a fair and impartial hearing in which they can question their accuser, call witnesses on their behalf or otherwise present evidence in their defense and, the right to request an appeal hearing of any findings; however, in practice, these rules are merely pro forma or perfunctory and are not actually used, followed, or enforceable in YCDC.

I received a total of 19 disciplinary violations while housed in YCDC and even though I requested, or attempted to request, a disciplinary hearing for every single violation, I never received a single fair and impartial "hearing" for any one of the violations while at the same time — I was subjected to placement, and/or continual placement, in the Jail's F1-SMU1 punishment unit, forced injections with psychotropic drugs, "zero items status," and denied access to courts and/or subjected to other punishments, for disciplinary violations.

I was excessively and/or grossly deprived of due process in the following listed disciplinary report numbers where I was denied, or deprived of a reasonable or meaningful opportunity to request, a disciplinary hearing or an appeal hearing, and/or where I was given insufficient or inadequate notice or was deprived of a reasonable or meaningful opportunity to prepare or present my defense, and/or where I was deprived of a fair or impartial

(Count 5 continues)

process;

    June 26, 2020 § Report #2020-0762, 4rD.1.a violation

    July 8, 2020 § Report #2020-0803, 4rD.1.a violation

    February 18, 2021 § Report #2021-0251, 4rC.1.b violation

    April 12, 2021 § Report #2021-0643, 4rC.1.b violation

                        Report #2021-0643, 4rD.1.d violation

    November 8, 2021 § Report #2021-2037, 4rD.1.a violation

    May 5, 2022 § Report # Unknown, violation unknown

I was housed in the YCDC as a pretrial detainee awaiting trial and do not have any past, or present, convictions out of the County of Yuma; all of my pending criminal charges in Yuma County have since been dismissed with prejudice; I am not now, nor was I at anytime relevant, serving any sentence of imprisonment out of the County of Yuma and I am no longer in the custody of YCDC; any favorable outcome in relation to my claims herein will not affect the fact or length of any sentence that I may be serving;

— At all times relevant, Defendant County of Yuma and the Sheriff of Yuma County, Defendant Sheriff Leon N. Wilmot and YCDC officers, Defendants Captain Kelly D. Mauer, Lt. Michael Cooper, Lt. Duarte #D-5, Lt. Gomez #D-3, Lt. Guerrero, and Lt. Obzposee, acting under color of state law, violated my 14th Amendment Constitutional Rights as a pretrial detainee when he/she/they failed to train or hire and/or, created, implemented, promoted, encouraged, or condoned the customs, policies, practices, and procedures of depriving YCDC pretrial detainees adequate and meaningful notice of disciplinary charges, and/or the right to fair and impartial disciplinary hearings or any type of actual disciplinary hearings, and/or the right to question their accuser, call witnesses on their behalf, or to meaningfully defend themselves, and/or the right to a fair and impartial hearing officer, and/or of punishing items for requesting hearings on alleged violations; imposing an atypical and significant hardship upon myself while housed in YCDC;

— At all times relevant, YCDC officers, Defendants DO Covarrubias #D-125, DO Victor Davilas #D-160, Sgt. Eldee Harper, Jr. #D-11, DO Eric Mendez #D-108, SDO D. Perez, SDO Rodriguez #D-26, Sgt. To Ruelle, Sgt. Sanchez, Sgt. A. Serna #D-25, Sgt. C. Silva #D-29, DO Diana Sosa #D-129, and SDO William Valdez #D-101, and "DOES 1-50," acting under color of state law, violated my 14th Amendment Constitutional Rights when he/she/they

16 of 20

( Count 5, continued )

committed any one or all of the acts - causing any one of all of the injuries, as stated herein and/or in any other related, joined, or consolidated counts; and/or failed to intervene or act to remedy and/or to provide any type of relief for any one or all of the conditions and violations of my constitutional rights as stated above.

4. **INJURY**

I hereby incorporate all statements of fact and injuries as stated herein and/or above and in any related, joined, or consolidated counts.

I was stripped and deprived of all of my 14th Amendment constitutional rights and protections by the Defendants and the YCPC.

5. **Administrative Remedies:**

a. Yes, b. Yes, c. Yes, d. N/A

# Count 6

1. 1st Amendment Violations
2. Retaliation
3. **Supporting Facts**

In June of 2020, I was placed into the Jail's punishment unit, F1-SMU, Because I/m's in the F1 unit are prohibited all use and access to commissary items, including hygiene and, Because I have long hair with braids and was being deprived of any "hair ties" and all hair care products, I began using the elastic from face masks as hair ties. From June 2020 to February 2022 I used elastic for hair ties, there is photographic, as well as video recordings, documenting this fact.

There were no Jail Rules expressly prohibiting this act and I never once received a single disciplinary violation, warning, or reprimand from YCDC staff for this act.

In August of 2020, the Jail began regulating my use of a writing utensil to a "Rubber pencil" which was actively interfering with my access to courts and despite numerous grievances and grievance appeals and conversations with the Jail's supervisory staff, the Jail steadfastly refused to remedy the situation or to provide any relief.

I then moved before the Yuma County Superior Court asserting 1st and 6th amendment rights to access the courts where I was self represented in my criminal case as well as in multiple civil cases and demanded relief in being allowed access to a "ink pen filler." On December 9, 2020, following a hearing where oral arguments and evidence was presented by all parties and, where SDO Caudillo, a supervising "court officer" whom was representing the Jail's interest during the hearing as the State's Liason, was vehemently opposed to my requested relief and adamantly urged his position thru the prosecutor," the court granted the requested relief order YCDC to provide me access to a Pen filler.

Immediately following the hearing, as I was escorted Back to the Jail and placed into the holding cell for "strip search" procedures, SDO Caudillo and SDO Julian Aguayo "huddled up" and had a whispered conversation. SDO Aguayo then came over and ordered me to take my hair ties and to give them to him and Because this had not been done in the 6 months that I had been wearing the hair ties, I asked "why" and he stated, "Because they're not allowed. Since I had had these same hair ties in my hair for almost every single court appearance I'd made in YCDC and, Because SDO Caudillo and SDO Aguayo had been present as my escorts for every single one of those hearings — with SDO Aguayo himself conducting the strip searches of my person following each hearing

( Count 6, continues )

and, neither officer had ever commented on or made any issue concerning my hair ties." I understood that this was my punishment in retaliation for moving before the courts, asserting my constitutional rights and, being granted relief over the objections of SDO Caudillo and the YCDC. I explained that they were violating my rights by trying to retaliate against me because they lost the court hearing and that I would not be cowed and I did not give SDO Aguayo my hair ties. SDO Aguayo wrote me a disciplinary violation for disobeying a direct order and SDO Caudillo authorized and signed off on the disciplinary report (Report # 2020-1627, dated 12-4-20). I never received any disciplinary, then or ever, for possessing any "contraband" or unauthorized items for my hair ties. I filed grievances on SDO Caudillo and SDO Aguayo for retaliation and even though I continued to wear those same hair ties around the Jail and to every single court appearance following the incident, which both officers were always present for, neither SDO Caudillo or SDO Aguayo, or any other officer, ever made any issue or wrote me any disciplinary concerning my hair ties.

— On or about December 4, 2020, YCDC officers, Defendants SDO Julian Aguayo and SDO Caudillo, acting under color of state law, violated my 1st Amendment constitutional rights to be free of retaliation for exercising my constitutional rights when, without legitimate reasons or intents, they committed any one or all of the acts - causing any one or all of the injuries, as stated herein.

## 4. INJURY

I was stripped and deprived of all of my 1st Amendment constitutional rights and protections by SDO Aguayo and SDO Caudillo and the YCDC. The retaliatory disciplinary violation extended and/or assisted on my continued placement in the Jail's F1-SMU 1 unit under harsh, severe, and unconstitutional conditions.

## 5. Administrative Remedies

a. Yes,    b. Yes,    c. Yes,    d. N/A

### E. REQUEST FOR RELIEF

State the relief you are seeking:

Defendant Sheriff Leon N. Wilmot is sued in his Official Capacity only as to all Counts Relevant for Declaratory, and/or Injunctive, and/or Punitive Damages, and/or other equitable Reliefs as to each and every violation of my Constitutional Rights by YCDC and all Defendants.

All other Defendants are sued in their Individual Capacities as to all Counts Relevant for Nominal, and/or Compensatory, and/or Physical, Psychological, Mental and Emotional Injuries, pain and suffering, and/or Punitive, Damages for a sum total of $5,000,000.00 (Five Million dollars), and in their Official Capacities as to all Counts Relevant for all Prospective Reliefs as stated above. I Respectfully Pray that my Pro se prisoner complaint be "liberally Construed" and that this court issue forth any other such orders and Reliefs that it deems to be fair, Just, and appropriate in the interest of Justice.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 5, 2022
DATE

SIGNATURE OF PLAINTIFF

N/A
(Name and title of paralegal, legal assistant, or other person who helped prepare this complaint)

Handed to prison officials for E-file on July 5, 2022

N/A
(Signature of attorney, if any)

N/A
(Attorney's address & telephone number)

### ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space, you may attach no more than fifteen additional pages. But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.